IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEAN MORENCY,

   Plaintiff,

v.

EMOLE UGURU,
JOHN AND JANE DOES 1 - 10,
M. JORDAN,

   Defendants.

Civil Action No.: PX-22-0718

**MEMORANDUM OPINION**

Jean Morency, an inmate at Eastern Correctional Institution ("ECI"), has filed a verified Complaint, alleging that defendants knowingly failed to keep him safe from his cellmate's assaults. ECF Nos. 1. Defendant Emole Uguru[1] filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. ECF No. 14. A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Defendant's motion shall be GRANTED in part and DENIED in part.

**I.   Background**

On February 25, 2019, Morency, an inmate at Maryland Correctional Institution-Jessup ("MCI-J"), asked to be placed in protective custody because the nature of his criminal conviction prompted other inmates to threaten him. ECF No. 1 at 3-4, ¶ 8. Morency's request was granted, and he was placed in administrative segregation "under the aegis of protective custody." *Id*.

On March 22, 2019, Morency was assigned to a cell with inmate, Norman Bonds. ECF No. 1 at 4, ¶ 9. To Morency, Bonds appeared mentally unstable as he was drinking from the toilet

---

[1] Uguru was the only Defendant properly served. As for "M. Jordan," the facility's litigation coordinator advised that he no longer works at the facility. ECF No. 21 at 2. Counsel will be directed to disclose where M. Jordan now works so that he may be served with the Complaint.

and threatening to hurt Morency.  *Id*. at ¶ 9-10.  Within short order, Bonds was threatening to kill Morency.  *Id*. at ¶ 10.

Morency informed Corrections Officer Jordan about Bonds' bizarre behavior and requested that one or the other be moved to another cell.  ECF No. 1 at 4, ¶ 11.  Jordan replied loudly that Morency was a "snitch" for reporting Bonds and that Morency should expect such threats in light of his criminal conviction.  *Id*. at ¶ 12.  Jordan, in short, refused to separate the cellmates.

Morency next alerted Officer Uguru to the same problematic threats, including that Bonds had vowed to kill him before the end of the day.  ECF No. 1 at 5, ¶ 13.  Uguru also declined to take any action because Bonds had not yet "put his hands" on Morency.  *Id*. at ¶ 14.  Uguru made clear that he unless Bonds assaulted Morency, Uguru need not do anything.  *Id*.

Morency also tried to enlist the assistance of "various John and Jane Doe Correctional Supervisors ranging in rank from Sergeant to Lieutenant."  Each claimed to be too busy and advised Morency to contact his tier officer.  ECF No. 1 at 5, ¶ 15.  One officer assured Morency that he would be moved but it did not come to pass.  *Id*.  Rather, fifteen hours after Morency was first placed in the cell with Bonds, Bonds punched Morency in the face, head, torso, arms, legs, and back.  *Id*. at 5-6, ¶ 16.  Morency sustained an orbital wall fracture, traumatic head injury, lip laceration, and an abrasion to his leg.  ECF No. 26 at 1-3.  Uguru, for his part, claims no memory of speaking to Morency and surmises that Morency has mistaken him for another guard.

## II.     Standard of Review

Defendant Uguru has moved to dismiss the claim under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in his favor.  Such motions implicate the Court's discretion under Rule 12(d).  *See Kensington Vol. Fire Dep't, Inc. v.*

*Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the Court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Morency was placed on notice that Defendant sought summary judgment and that he retained the right to respond.  ECF No 15.  Morency has filed a verified Complaint[2] and after Uguru moved for summary judgment, Morency filed relevant medical records "in support of the . . . complaint." ECF No. 25.  Morency highlights that the records are partial, "due to lack of funds," and that "as exhibits are made available to Plaintiff, they will be submitted to the Court." ECF Nos. 25.  Accordingly, the Court construes Uguru's motion as one for summary judgment.  *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  Importantly, "the mere existence of *some* alleged factual dispute between the parties will

---

[2] On summary judgment, the Court considers a verified complaint the equivalent of a sworn affidavit.  *Davis v. Zahradnick*, 600 F.2d 458, 459-60 (4th Cir. 1979).

3

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

## III.   Analysis

Uguru fronts three arguments: (1) that he is immune from suit for actions taken in his official capacity; (2) that Morency has not generated sufficient evidence to pursue an unconstitutional conditions of confinement claim; and (3) even if the claim survives challenge, Uguru is qualifiedly immune from suit. ECF No. 14-1. The Court considers each argument in turn.

### A.   Eleventh Amendment Immunity from Official Capacity Suit

The Eleventh Amendment to the United States Constitution bars citizen suits in federal court against, a state or its agents absent waiver, consent or legislation. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). No such exception to immunity applies here. Thus, to the extent that Morency raises an official capacity claim against Defendant Uguru, the claim must be dismissed.

The Court next turns to the claims as brought against Uguru in his individual capacity.

### B.   Eighth Amendment Failure to Protect Claim

The Eighth Amendment protects an inmate from cruel and unusual punishment, *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)), including

"violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833.  Sure, not every injury suffered by a prisoner at the hands of another inmate amounts to an Eighth Amendment violation. *Id*. at 834.  But where the inmate has suffered an objectively serious deprivation of rights and the official allegedly responsible for the deprivation has acted with "deliberate indifference" to inmate health or safety, an Eighth Amendment claim shall lie. *Id*. at 826, 834.  In this context, an officer whose acts or omissions knowingly place the prisoner at risk of significant physical or emotional injuries can amount to an Eighth Amendment violation.  *See Danser v. Stansberry*, 772 F.3d 340, 346-47 (4th Cir. 2014).  This determination includes assessing "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Uguru argues that summary judgment in his favor is proper because no evidence demonstrates that Morency suffered a constitutionally significant injury.  ECF No. 14-1 at 6-10.  Morency responds with medical records documenting the significance of his wounds.  From Bonds' assault, Morency's eye socket was fractured and he sustained traumatic head injury, a busted lip, and an abrasion on his leg.  On this record, Morency has generated sufficient evidence from which a reasonable trier of fact could find in his favor on this point.

Uguru next obliquely argues that he has no memory of discussing Morency's fear of Bonds.  This does little to advance his plea for summary judgment.  Morency's own verified complaint establishes that he sought help from Uguru.  Further, when Uguru failed to act, Bonds pummeled him.  This is enough at this juncture for the claim to proceed.  The self-serving amnesia defense does not permit Uguru to sidestep suit.

Uguru also claims that he lacked authority to move Morency to another cell.  This may be, but Uguru's inability to unilaterally move an inmate does not mean that Uguru could not take *any*

action to protect Morency against a known threat of physical violence. Given that Morency has sworn under penalties of perjury that he begged for help from multiple officers, including Uguru, coupled with the serious nature of his injuries, a jury could conclude that a reasonable prison official would have known that leaving Morency with Bonds would result in grievous bodily injury to Morency.  In short, sufficient evidence exists to allow the Eighth Amendment claim to proceed against Uguru.  *See Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2003).

C.     **Qualified Immunity**

Last Uguru argues that even if Morency could prevail on his Eighth Amendment claim, Uguru is entitled to qualified immunity.  ECF No. 14-1 at 4-5.  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  An officer enjoys the defense of qualified immunity when his conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McDaniel v. Arnold*, 898 F. Supp. 2d 809, 831–32 (D. Md. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To enjoy the protection of qualified immunity, the officer must show that either he did not violate the constitutional rights of the plaintiff, or that if he did, no clearly established law existed at the time to alert him that such conduct was unlawful.  *See id*. at 832.

Uguru summarily argues that Morency has not demonstrated a violation of "rights."  But as already discussed, the verified complaint and medical records, viewed most favorably to Morency, could establish that Uguru failed to protect Morency from a known impending attack from Bonds. Morency was already housed in protective custody "due to the nature of his convictions."  ECF No. 1 at 4.  On the day that Bonds was placed in Morency's cell, Morency told

Officer Uguru that Bonds had been acting erratically and had threatened to kill Morency "before days end." ECF No. 1 at 5. Uguru also knew that Morency had alerted other guards to the same threats. *Id.* Finally, Uguru's response to Morency when he asked to be separated from Bonds -- "let's see when [Bonds] puts his hands on you, then I will move you" -- reflects that Uguru knew the risk of assault to be high and yet chose not to take any action whatsoever until after the assault occurred. *Id.* Accordingly, sufficient evidence exists for a rational juror to find that Uguru had failed to protect Morency from a known risk of inmate assault, thus supporting an Eighth Amendment violation.

Second, the right at issue is clearly established. As the Fourth Circuit aptly held, "being assaulted in prison is not part of the penalty that criminal offenders pay for their offenses against society," and officers like Uguru are responsible for "protect[ing] prisoners from violence at the hands of other prisoners." *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014) (citations and internal quotation marks omitted). Thus, while the Court concludes as a matter of law that the constitutional right, as framed, is clearly established, it will remain a question for the trier of fact to determine if Morency's rights had been violated. *See Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (while the purely legal question of whether the constitutional right at issue was clearly established is always capable of decision at the summary judgment stage, a genuine question of material fact regarding whether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial) (internal citations and quotation marks omitted).

### IV.     Conclusion

For the foregoing reasons, the Court grants Defendant's motion as to any official capacity claim and otherwise denies the motion. Additionally, because Morency proceeds *in forma pauperis*, it would be difficult, if not impossible, for him to identify the unknown defendants and

engage in discovery without the assistance of counsel. Thus, counsel shall be appointed to represent him. *See* 28 U.S.C. § 1915(e)(1) (the Court may request an attorney to represent any person proceeding in forma pauperis who is unable to afford counsel); *see also Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975) (stating that courts appoint counsel only in exceptional circumstances).

To ensure that the unidentified defendants are properly named and served with the Complaint, defense counsel is directed to provide counsel for Morency with a copy of the MCIJ duty roster for March 22, 2019, together with all reports regarding Morency's assault, the current place of employment for Officer "M. Jordan," and any other documentation that would assist in identifying the unknown defendants. Upon receipt of the described documents, counsel shall engage in a good faith meet-and-confer regarding a mutually agreeable schedule setting deadlines for filing an Amended Complaint, serving the additional officers, and for Uguru's Answer to the allegations against him.

A separate Order follows.

| | |
|---|---|
| 6/30/23 | /S/ |
| Date | Paula Xinis<br>United States District Judge |